UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 1:03-CR-86-TS |
| | ) | |
| STEVE M. SMITH | ) | |

**OPINION AND ORDER**

This matter is before the Court on the Defendant's motion to enforce a plea agreement alleged to have been entered into by the parties.

**A.   Background**

The Defendant was indicted on December 4, 2003, for two counts of distributing cocaine in violation of 21 U.S.C. § 841(a)(1). Susan Collins represented the government, and Attorneys Nick Thiros and Alison Benjamin represented the Defendant. All of the attorneys have their offices in Northwestern Indiana, near Hammond. The case was assigned to this Court, located in Fort Wayne, Indiana. Trial was originally set for February 10, 2004, but was continued several times, until it was set for May 2, 2005. On April 11, 2005, the government gave to the defense counsel a proposed plea agreement. Defendant again moved to continue the trial, and trial was set for August 23, 2005. To facilitate plea negotiations, the Court granted the Defendant's motion to have a presentence report (PSR) prepared before a plea agreement was signed or a guilty plea was entered. (Court's Order of April 26, 2005; DE 41.) On July 8, 2005, defense counsel sent the proposed plea agreement to the probation department to assist in the preparation of the preliminary PSR.

On August 8, 2005, the Court held a telephone conference with the parties. During this conference, the Court was informed that there would likely be a plea, and that the attorneys had to

work out all of the details. (August 8, 2005, Tr. 3 ("MR. NICK THIROS: Okay. There is going to be a plea. All we need to do is work out all the details with Miss Collins.").) Another conference was set for August 17, 2005.

At the August 17 conference, it was agreed that there was a "plea on the way," though there were issues left to be negotiated, including the level of departure and the elimination of a sentencing enhancement. (August 17, 2005, Tr. 3–6.) The parties agreed that the Defendant would sign the plea agreement on the day of the plea hearing and that the plea hearing would take place on the same day as sentencing. This was done to reduce the travel time of the attorneys. As was agreed at the August 17 conference, on August 19, 2005, the Defendant filed a motion to vacate the trial set to begin on August 23, because a plea agreement was anticipated and a short period of time was needed to finalize the agreement. (Def. Mot. to Continue 1–2, Aug. 19, 2005; DE 45.) On August 23, 2005, the Court vacated the jury trial and set a change of plea hearing and sentencing for October 6, 2005. (Court's Order of Aug. 23, 2005; DE 46.)

On August 22, 2005, the government sent to the Defendant's attorneys a proposed plea agreement, signed by the government. On September 12, 2005, the government filed a motion for a three level downward departure under U.S.S.G. § 5K1.1. A revised PSR was submitted by probation on September 20, 2005, which took into account the plea agreement proposed by the government on August 22. Due to a busy calendar, on September 30, 2005, the Defendant requested a continuance of the plea and sentencing hearing scheduled for October 6. The request was granted and the hearing was reset for December 9, 2005. On November 29, 2005, the Defendant filed a request under seal for further departure. The December 9 hearing was reset to December 19, 2005, because of snow. On December 16, 2005, the government filed a motion to continue the plea and

sentencing hearing set for December 19 because the government believed the Defendant's November 29 request for further departure created a conflict of interest for the government. On December 19, 2005, a telephone conference was held, and the Court granted the requested continuance and set a status conference for January 20, 2006.

At the January 20 telephone conference, the government appeared by attorneys Sue Collins and Kathryn McCarthy of the U.S. Attorney's office for the Eastern District of Michigan. The government stated that it was in the process of substituting counsel for the government. The Court asked the parties when they would be available to proceed with the plea hearing and sentencing, and counsel for the Defendant stated,

> before we start setting down sentencing dates, we need to see what's transpired and what's going on, because it may be that we need a little more time if, in fact—well based on what we find out, there might be some more negotiating that needs to be done or something needs to be worked out with regard to Mr. Smith relative to sentencing.

(Jan. 20, 2006, Tr. 4.) In order to give the parties time to talk and work out any remaining issues, a status conference was set for February 22, 2006. On January 30, 2006, Attorney Karl Overman entered his appearance on behalf of the government.

At the February 22, 2006, telephone conference, attorney Overman stated that there was no final plea agreement, and counsel for the Defendant disagreed, stating the plea agreement was the agreement sent by the government on August 22. The Court set another status conference on March 2, 2006, to see if the parties could agree on whether a plea agreement existed. On March 2, 2006, the parties had not reached an agreement, and so the Court set the matter for briefing and an in person hearing on March 28 to determine whether an agreement existed and had to be enforced over the objections of the government.

The Defendant filed its motion asking the Court to specifically enforce the plea agreement

3

on March 14, 2006, and the government responded on March 24, 2006. The hearing was held on March 28, and the parties argued their briefs. The Court orally ruled that no agreement existed and that the Defendant had no right to specifically enforce the plea agreement. The Court also stated that this written opinion would follow.

**B.     Analysis**

The Defendant argued that the August 22 proposed agreement was the final plea agreement of the parties. The Court disagrees and finds that no plea agreement ever came into existence. The government's brief shows that even after the August 22 agreement was sent to the Defendant, negotiations as to the terms of the agreement continued. (Gov. Br. 7–8; DE 78.) Even at the January 20 phone conference, defense counsel stated that further negotiations regarding the extent of the government's recommendation for downward departure was needed. (Jan. 20, 2006, Tr. 4.) Also, there is no indication that the Defendant ever agreed to the plea agreement. The Defendant's August 19, 2006, motion for continuance states that the Defendant represented to his attorneys that he would accept a plea agreement in which a gun enhancement was eliminated and the government would recommend a three level downward departure under § 5K. (Def. Br. 20; DE 73.) Saying that he would accept such an agreement, when the government had not yet offered it, does not constitute acceptance. The agreement was never given to him to definitively decide whether to accept or decline the agreement. Because the Defendant never signed or agreed to a proposed agreement, and negotiations continued even after the plea agreement was allegedly accepted, the Court finds that no agreement ever existed.

The Defendant argued that the Court's accommodation of the parties' request to allow the

4

Defendant to sign his plea agreement on the same day as his sentencing and a plea hearing requires a finding that a plea existed, because absent this accommodation, the Defendant would have signed the agreement and submitted it to the Court. However, the Court has no way of knowing whether the Defendant would have actually signed the proposed agreement had the Defendant been given the chance to do so. Also, the Defendant benefitted from this delay by giving his attorneys more time to negotiate for a larger downward departure.

Even if the parties entered into a plea agreement, because the Defendant had not entered a plea, the government could withdraw the agreement without violating the Defendant's Constitutional rights. In *Mabry v. Johnson*, 467 U.S. 504 (1984), the Supreme Court considered whether a defendant has a constitutional right to have a plea agreement specifically enforced when he has not yet entered a guilty plea. The Court found no such constitutional right existed: "A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution." *Mabry*, 467 U.S. at 507–08. The Court found that *Santobello v. New York*, 404 U.S. 257 (1971), did not require a different result. *Santobello* held that a defendant's due process rights are violated where he pleads guilty without being fairly apprised of its consequences. *Mabry*, 467 U.S. at 509. Where, as in *Mabry*, the government withdraws a plea agreement before a plea is entered in reliance on the plea agreement, a defendant's constitutional rights are not violated. Here, the Defendant has not yet plead guilty, and, unlike the Defendant in *Mabry*, never accepted the proposed plea agreement.

The Defendant argued that he believed he had a plea agreement and relied upon it to his detriment and the Court ought to enforce the agreement under the contractual doctrine of promissory

5

estoppel. Some courts have held that government promises inducing a defendant's reliance may be specifically enforced. *United States v. Streebing*, 987 F.2d 368, 372 (6th Cir. 1993) ("[S]everal courts have acknowledged that the principles of *Santobello* apply whenever a defendant acts to his detriment in reliance upon governmental promises."); *Johnson v. Lumpkin*, 769 F.2d 630, 633 (9th Cir. 1985) ("As a general rule, fundamental fairness requires that promises made during plea-bargaining and analogous contexts be respected."). For such promises to be enforced by a court, "(1) the agent must be authorized to make the promise; and (2) the defendant must rely to his detriment on that promise." *Lumpkin*, 769 F.2d at 633. This Court is not aware of any Seventh Circuit case endorsing this doctrine, but regarding this case, it is sufficient to say that the doctrine is inapplicable because no promise was made to the Defendant making reliance reasonable and no detrimental reliance has been shown. All that has been shown is that the parties expected to reach an agreement, but were still negotiating the details. There is no evidence that the government promised not to withdraw its offer or promised to abide by the proposed agreement even though it had not been accepted. The Defendant's brief cites as Defendant's detriments his waiver of Speedy Trial rights, waiver of normal plea agreement procedures such as filing the plea with a court prior to the plea hearing, and foregoing additional discovery or pretrial work. (Def. Br. 31; DE 73.) To the extent these are detriments, they were in reliance of the possibility of a plea agreement, not in reliance of any promise of the government. At the hearing, the Defendant argued he may have made incriminating statements when cooperating with the government in reliance of a plea agreement. This can be remedied by excluding such statements at trial to prevent any unfairness.

In any event, it appears that the Defendant's cooperation has been quite limited. In fact, as argued by the government, had the agreement actually been entered into, the Defendant's failure to

6

cooperate with the government would justify the government's withdrawal of the agreement. The proposed agreement would have required the Defendant to "cooperate fully, truthfully, and candidly with the United States Attorney . . . as to [the Defendant's] knowledge of or involvement in, any violation of federal or state law . . . ." (Def. Br. Ex. D; DE 73.) The government argues the Defendant lied to government agents and failed to fully cooperate. The government cites the Defendant's denial of having a gun when he committed the offense. A recorded jail conversation suggests the Defendant had an acquaintance obtain the gun from a ditch where he had thrown it during the police chase that occurred before his arrest. (Gov. Br. 14–15; DE 78.) Also, he has never disclosed his dealings with various drug dealers, and he has never revealed the source of the drugs at issue in this case. (Gov. Br. 15–17; DE 78.)

Because no plea agreement exists, no guilty plea has been entered into, no promise has been made to the Defendant on which he relied to his detriment, and had a plea agreement existed, the government would have been justified in withdrawing it, the Court denied the Defendant's motion to specifically enforce the alleged plea agreement.

Entered on April 12, 2006.

     /s/ Theresa L. Springmann
    THERESA L. SPRINGMANN
    UNITED STATES DISTRICT COURT